IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CLAREMONT PROPERTY COMPANY, INC., | * |
| *Plaintiff,* | * |
| v. | * |
| ISLAND TOWER OWNERS ASSOCIATION, INC. et. al. | * |
| *Defendants.* | * |
| | CASE NO.: 1:22-CV-00206 |
| ISLAND TOWER OWNERS ASSOCIATION, INC., | * |
| *Counterclaim Plaintiff,* | * |
| v. | * |
| CLAREMONT PROPERTY COMPANY | * |
| *Counterclaim Defendant.* | * |

**ANSWER AND COUNTERCLAIM OF DEFENDANT, ISLAND TOWER OWNERS ASSOCIATION, INC.**

COMES NOW Defendant, Island Tower Owners Association, Inc. (hereinafter "ITOA"), and for Answer to Plaintiff, Claremont Property Company's (hereinafter "Claremont") Complaint avers the following:

1. Admitted that Claremont does business in Alabama. Denied as to the other allegations in this paragraph due to lack of information.

2. Admitted.

3. Denied.

## JURISDICTION AND VENUE

4. Denied. This case has been removed to the United States District Court for the Southern District of Alabama. Its jurisdiction has been invoked by Defendant ITOA pursuant to 28 USC § 1332.

5. To the extent that Paragraph 5 alleges a basis of venue, defendant admits that venue is proper in the United States District Court for the Southern District of Alabama.

## FACTUAL ALLEGATIONS

6. Admitted.

7. Admitted that Defendant and Plaintiff executed a Restoration Contract on November 20, 2020. The contract is attached hereto and made a part hereof as Exhibit 1.

8. Denied.

9. Denied.

10. Denied.

11. Denied.

## COUNT I
## BREACH OF CONTRACT

12. For answer to the allegations incorporated in Paragraph 12 of the Complaint, ITOA incorporates herein each response, admission and denial of Paragraphs 1 through 11 of its Answer set forth herein above.

13. ITOA admits that it executed the contract attached hereto as Exhibit 1 but denies that the contract is valid or had any force or effect. In fact, the contract was null and void *ab initio*.

14. Denied.

15. Denied.

## COUNT II
## UNJUST ENRICHMENT/QUANTUM MERUIT

16. For answer to the allegations incorporated in Paragraph 16 of the Complaint, ITOA incorporates herein each response, admission and denial of Paragraphs 1 through 15 of its Answer set forth herein above.

17. Denied

18. Denied.

19. Denied.

20. Denied.

## **AFFIRMATIVE DEFENSES**

1. All of Claremont's legal and equitable claims are barred because Claremont lacked the licensure required by Ala. Code 1975 §34-8-1, et seq. to perform work as a general contractor during all relevant time periods.

2. Claremont's claim for relief is barred by its own unclean hands and inequitable conduct.

3. Claremont is barred from recovery because ITOA does not owe the money Claremont claims is owed.

4. Claremont's Complaint fails to state a claim upon which relief can be granted.

5. Claremont failed to perform under the alleged contract; therefore, there can be no remedy to Plaintiff for any alleged breach by Defendant.

6. The contract fails due to illegality.

9. The alleged contract was procured by fraudulent misrepresentation; therefore, Claremont's claims are barred.

10. The alleged contract fails for lack of definiteness.

11. Claremont has failed to mitigate its claimed damages; therefore, Claremont's recoverable damages are barred or limited.

12. Claremont's claims are barred by the doctrines of laches, waiver, estoppel, unclean hands, and related equitable doctrines.

13. Claremont has failed to satisfy conditions precedent under the alleged contracts.

14. Claremont's claim is barred to the extent that Claremont has not qualified to do business in the State of Alabama.

15. Claremont's claim for unjust enrichment/quantum meruit is limited to the value of any improvements Claremont performed at the Condominium.

16. Claremont's claim for unjust enrichment/quantum meruit is barred to the extent that Claremont alleges the existence of an enforceable contract.

17. Defendant pleads the provisions of the Alabama Litigation Accountability Act, Ala. Code §§ 12-19-270 et seq., as Claremont's suit against Defendant is brought without substantial justification.

## COUNTERCLAIM

*Parties*

1. Counterclaim Plaintiff, the Island Tower Owners Association, Inc. (hereinafter "ITOA"), is an Alabama nonprofit corporation existing under the laws of the State of Alabama, with its principal place of business located in Gulf Shores, Baldwin County, Alabama.

2. Counterclaim Defendant, Claremont Property Company, Inc. (hereinafter, "Claremont"), is a Texas corporation conducting business in Alabama.

*Factual Allegations*

3. The property made the subject of this litigation is the Island Tower Condominium, located at 521 West Beach Blvd. in Gulf Shores, Baldwin County, Alabama (hereinafter "Island Tower", or "the building") and its common elements and limited common elements.

4. Hurricane Sally caused significant damage to Island Tower ("the Condominium") when it struck on or about September 16, 2020.

5. The hurricane damaged the roof and exterior cladding of the building and its component parts and resulted in water intrusion into the building, damage to balconies, damage to the pool, cracks in the ceilings and walls of the interiors of some parts of the building, damage to paint and other finishes and fixtures in the interior of the building and in individual units, damage to personal property and other damages.

6. On or about November 20, 2020, ITOA entered into a Restoration Contract with Claremont, attached hereto as Exhibit 1. By Section 2.1 of the contract Claremont agreed to "furnish labor, supervision, materials, fixtures, equipment and tools necessary to timely complete the scope of work detailed in the final insurance company approved Xactimate estimate in a good and workmanlike manner using materials and finishes of equal or better quality than those currently existing on the Property("Work")."

7. By Section 4.4, Claremont represented that "it is an independent general contractor".

8. Upon information and belief, Claremont, "unlawfully engaged in business as a general contractor, without authority from the licensing board for contractors so to do." See *Ala. Code* 1975 § 34-8-10.

9. After Claremont commenced work, it unilaterally and without approval of ITOA determined that additional moisture remediation services were necessary to continue the dry out

of the building and determine all sources of water intrusion. On information and belief, Claremont contracted with SRP Environmental, LLC, as its subcontractor for this work.

10. SRP performed a moisture mapping survey of the Condominium on or around December 10, 2020. The survey purported to reveal significantly more extensive moisture and potential microbial growth present throughout the building.

11. Claremont represented to ITOA that it was necessary to remove components of individual condominium units and common elements that were affected by the moisture and microbial growth as found by SRP's testing, even though this work was potentially not covered by ITOA's insurance. Claremont further represented that it would not initiate repairs without insurance approval of and direction for the work to be done and required ITOA to agree to an amendment of the Restoration Contract to proceed with repairs to the building prior to insurance approval of the scope of work.

12. On February 25, 2021, Jessica Svenson executed a First Amendment of Restoration Contract on behalf of ITOA. This amendment expanded the scope of work to include demolition of certain portions of individual units starting at the top of the building. The work was limited to areas identified as affected by moisture on the SRP moisture mapping document which was incorporated into the First Amendment of Restoration Contract as Exhibit A. This contract is attached hereto and made a part hereof as Exhibit 2.

13. After beginning demolition in units at the top of the building, Claremont informed ITOA that it had found more microbial growth than anticipated and requested that ITOA hire a consultant to perform air quality testing to ensure the health of its residents while the demolition was ongoing. ITOA hired Capital Beltway Environmental, whose representative conducted the air quality testing throughout the building.

14. As Claremont continued to remediate the water damage through its subcontractor, SRP, it removed far more drywall from affected individual units than was indicated for removal on SRP's moisture maps. SRP tore out large areas of unaffected and undamaged drywall, baseboards, cabinetry, and other fixtures; far in excess of that represented to ITOA as the agreed scope of the moisture and microbial remediation work. As a result of SRP's work, the top fifteen units in the Condominium were significantly damaged.

15. ITOA concluded that SRP's extensive demolition was unnecessary and beyond the scope of that represented; terminated the contract with Claremont and instructed Claremont to stop work and to prohibit SRP from further demolition below the 21st floor of the building.

16. Claremont submitted invoices to ITOA totaling over $900,000.00 for labor and materials it claimed to have provided prior to the date of termination.

17. As a result of Claremont's negligent performance of the work and consequential termination, on or about August 19, 2021, ITOA had to retain a substitute general contractor, Steward Construction Company, to complete the interior repairs to the building. The cost of the repair work was significantly higher than necessary because of the damage done by Claremont.

## COUNT I
## DECLARATORY JUDGMENT

18. Plaintiff, ITOA, realleges, adopts and incorporates by reference each and every allegation set forth in Paragraphs 1 - 17 as if fully set forth herein.

19. The Alabama Code at § 34-8-1(a) defines a "general contractor" as:

> one who, for a fixed price, commission, fee, or wage undertakes to construct or superintend or engage in the construction, alteration, maintenance, repair, rehabilitation, remediation, reclamation, or demolition of any building, highway, sewer, structure, site work, grading, paving or project or any improvement in the State of Alabama where the cost of the undertaking is fifty thousand dollars ($50,000) or more

<u>Code of Ala. § 34-8-1</u>

20. Alabama courts have instructed that they primary purpose of Chapter 8 is to protect the public against incompetent contractors for certain types of structures and also to better assure properly constructed structures which are free defects and dangers to the public. *See Cooper v. Johnston,* 219 So. 2d 392 (1969); *Hawkins v. League*, 398 So. 2d 232 (Ala. 1981).

21. Alabama courts have also held that a contract by an unlicensed "general contractor" as defined in § 34-8-1, is null and void as violation of public policy. Such contracts are illegal and unenforceable by the unlicensed general contractor. *Architectural Graphics & Constr. Servs. v. Pitman,* 417 So. 2d 574 (Ala. 1982).

22. There exists an actual controversy between ITOA and Claremont by which the rights of the parties are affected and, therefore, ITOA brings this action pursuant to the <u>Code of Alabama, 1975</u>, §6-6-220, et seq., for a declaratory judgment.

WHEREFORE, ITOA prays that this Honorable Court, upon a final hearing, will render declaratory judgment as follows:

a. Declare that Claremont was an unlicensed general contractor in Alabama during the time the work was done pursuant to the Restoration Contract and the First Amendment of the Restoration Contract.

b. Declare that as a result of Claremont's lack of general contractor licensure and pursuant to Ala. Code §34-8-1, et seq., the contract between Claremont and ITOA is null and void.

c. Declare that as a result of Claremont's lack of a general contractor license, Claremont is not entitled to any recovery at law or in equity for work done or materials provided pursuant to the illegal contract.

    d.      Declare that Claremont take nothing from ITOA and that it is responsible to ITOA for the damage it has sustained as a result of Claremont's work.

    e.      Declare all other just, general and equitable relief, the premises considered.

## COUNT II
## NEGLIGENCE

26.    Plaintiff, ITOA, realleges, adopts and incorporates by reference each and every allegation set forth in Paragraphs 1 – 17 as if fully set forth herein.

27.    Claremont assumed a duty to supervise SRP and ensure that all of its work was performed in a good and workmanlike manner and within the scope of the contract and as represented to ITOA.

28.    Claremont breached its duties by failing to properly supervise its subcontractor and prevent work beyond the scope of that represented.

29.    As a proximate consequence of its breaches of its duties, Claremont caused extensive damage to the Condominium and certain individual units. It also delayed the completion of the overall repairs and caused increases in the costs of repair. ITOA has been caused and will be caused in the future to expend substantial sums of money to repair the damage to the property, including but not limited to, the individual condominium units, common elements, limited common elements, and other portions of the condominium building.

30.    As a result of the delays in construction and the inflated costs of repairs caused by Claremont's permitting the top fifteen units of the Condominium to be excessively demolished, certain ITOA unit owners have sued ITOA in the Baldwin County Circuit Court to recover the damages related to those damages that they suffered in their individual units and their loss of use damages.

WHEREFORE, ITOA demands judgment against Claremont for damages in an amount in excess of the minimum jurisdictional limit of this Court plus interest, attorney fees, and costs of Court.

Respectfully submitted, this the 28th day of February 2023.

                                *s/George R. Irvine, III*
                                GEORGE R. IRVINE, III   (IRV001)
                                TYLER W. THULL   (THU009)
                                *Attorneys for Island Tower Owners Association, Inc.*

**STONE CROSBY, P.C.**
Attorneys at Law
8820 U.S. Highway 90
Daphne, Alabama 36526
Email:  girvine@stonecrosby.com
        tthull@stonecrosby.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 28th day of February, 2023, I electronically filed the foregoing with the Clerk of the Court using the *AlaCourt* Electronic Filing system which will send notification of such filing to the following:

Jack P. Russell, Esq.
HAND ARENDALL HARRISON SALE LLC
1801 5th Avenue N. Suite 400
Birmingham, Alabama 35203
Email:  jrussell@handfirm.com
-and-
Patrick Ward, Esq.
Emily B. Van Haneghan, Esq.
HAND ARENDALL HARRISON SALE LLC
Post Office Box 123
Mobile, Alabama 36601-0123
Email:  pward@handfirm.com
        evanhaneghan@handfirm.com
*Attorneys for Plaintiff, Claremont Property*
  *Company*

                                *s/George R. Irvine, III*
                                GEORGE R. IRVINE, III