# EXHIBIT 1

**CLAREMONT PROPERTY CO.**
a property solutions company since 1995

Remediation • Restoration • Roofing • Recovery

## RESTORATION CONTRACT

This CONTRACT ("Contract") is made as of 11/20/2020 (Effective Date), by and between Claremont Property Company, Inc., including any assumed names under which it may conduct business, ("CPC") and Owner or Owners Agent ("Owner") Island Tower Owners Association, Inc. for the property located at 521 West Beach Blvd. Gulf Shores, AL 36542. In consideration of the mutual promises, covenants and agreements herein, CPC and Owner agree as set forth below.

### ARTICLE I
### THE CONTRACT DOCUMENTS

**Section 1.1** The "Contract Documents" consist of this Contract, the time and materials rate sheet ("T&M Rate Sheet") attached as Exhibit "A", the plans and specifications, if available, identified in Exhibit "B", final Xactimate estimate, when complete, and, if any, all modifications or Change Orders issued after execution of this Contract. The Contract and any subsequent modifications must be agreed to in writing or as described in Section 3.8 by the parties to this Contract. In the event of conflict between the additional contract documents and this Contract, the provisions of this Contract shall govern.

### ARTICLE II
### THE WORK

**Section 2.1** CPC agrees to furnish labor, supervision, materials, fixtures, equipment and tools necessary to timely complete the scope of work detailed in the final insurance company approved Xactimate estimate in a good and workmanlike manner using materials and finishes of equal or better quality than those currently existing on the Property ("Work"). There are cases in which the insurance company does not approve every scope of work required to repair the building. In those cases, CPC will work with Owner to price those work scopes separately and CPC shall be paid for those Owner approved scope items separate from the payments made by the insurance company.

**Section 2.2** The term Project ("Project") as used herein shall mean all the approved Work on the real property in which the Work is being performed on.

**Section 2.3** The person signing below on behalf of the Owner, if different (the "Signing Party") hereby represent and warrant that one of the following is true (1) The Signing Party is the owner of the real property upon which the Work CPC is being hired to do Work on and is duly authorized to execute this Contract or (2) The Signing Party is the agent of the Owner of the Property and has a written property management agreement (or other written instrument in form acceptable to CPC) that authorizes the Signing Party to bind the Owner to this Contract. If Signing Party is the agent for the Owner then Signing Party agrees to make available for review the management agreement or other written agreement binding the Owner. Additionally, Signing Party, agrees to notify Owner of this Contract.

*\* all loss correspondence for insurance to go through David Busby or Luis Esteves*

## ARTICLE III
## THE CONTRACT PRICE

**Section 3.1** The Contract Price for the Work shall an amount equal to the final amount approved and detailed in the final Xactimate estimate by the Insurance Company (Insurance company name *Quick One \* Association Attorney \** and policy number *QUA30002797-00*). All costs associated with this Contract including any approved Change Orders or modifications to the Contract will be billed according to the percentage of the Work completed for the previous two week period on the 1st and 15th of each month and shall continue until the Work is complete. In cases where the Owner has received payments from the insurance company prior to a progress payment being due then Owner agrees to pay each invoice within 10 days of the date of the invoice. In the event progress payments are due prior to Owner receiving payment from the insurance company then the due date on such progress payments are automatically extended until 10 days after the Owner receives payment. Any invoices for work outside the insurance company scope shall be paid within ten (10) days of receipt.

**Section 3.2** Initial Deposit – An Initial deposit, if required, shall be *Insurance* and Owner shall deliver to CPC the Initial Deposit within _____ business days of the date performance of the Work is commenced. Owner's failure to deliver payment shall be a material breach of this Contract and entitle CPC at its sole discretion immediately cease the Work until such time as payment is received. Such work stoppage does not relieve Owner of all the remaining provisions of this Contract.

**Section 3.3** Insurance Coverage - So long as any Invoice(s) remain unpaid by Owner, all payments or future payments to be made by Insurance Carrier to Owner in connection with the Work must be made payable by check jointly payable to Owner and CPC. Upon issuance of a check by Insurance Carrier to Owner, Owner shall promptly endorse and deliver the same to CPC. Owner acknowledges and agrees that the foregoing is a continuing agreement applicable to the Work, the Invoice(s) and to any subsequent billing related to this Project. Owner's failure to comply with this shall be a material breach of this Contract. Nothing herein, however, shall alter or impair Owner's legal responsibility to pay the Contract Price.

**Section 3.5** Assignment of Proceeds – Intentionally left blank.

**Section 3.6** Owner agrees any sums received from the insurance company or lender that should go to CPC for Work on the Project are considered Trust Funds and shall be used for the purposes of (1) full completion of the Work. (2) payment of any invoices from CPC for Work approved by the insurance company and approved by Owner; (3) payment to any sub-Contractors, laborers and suppliers of CPC who have done work on the Property until all Work is fully completed and all invoices are paid in full.

**Section 3.7** There will be a *late* charge, which shall equal five percent (5%) of the amount of the invoice or any portion of an invoice which Owner has received payment from the insurance company and has not paid Claremont based on the payment terms listed above. Invoices shall be delivered to Owner or Owner's Designated Representative on a regular basis. If Owner has received money from the insurance company and does not pay CPC within ten (10) days after the date the Invoice is approved by the Owner or Owner's Designated Representative, then CPC may, at its option, stop the Work until payment of the amount owing plus any late charge has been received. In such event, CPC may also increase the Contract Price to include CPC's reasonable costs of shut-down, delay and start-up, which fees are not covered by insurance company.

**Section 3.8** Any modifications or changes to the Xactimate scope of Work shall be considered a

Change Order ("Change Order") with respect to this Contract. Any Change Order shall be done so in writing and signed be both Parties. A Change order may be submitted by e-mail to Owner indicating (1) an outline of what is to be changed, (2) the cost of the Change Order, and (3) any impact on timeline to complete the Work. The Owner shall confirm with confirmation to proceed and the Contract shall be modified accordingly. All costs associated with the Change Order(s) shall be paid in the same manner as set forth above for the Work.

## ARTICLE IV
## DUTIES, COOPERATION AND AUTHORIZATION

**Section 4.1** CPC agrees to furnish all labor, supervision, materials, equipment, tools, supplies, subcontract work and services, which in CPC's sole discretion is reasonably necessary to timely and fully perform and complete the Work in a good and workmanlike manner.

**Section 4.2** Owner agrees to cooperate with CPC in the performance of the Work, provide timely responses to requests for information, and such duty shall last until completion of the.

**Section 4.3** Owner authorizes CPC to remove contents and non-fixture parts of the building as necessary in accordance with the scope of work to clean or protect from harm and either store onsite in secure containers. In certain instances it may be required for these contents to be stored offsite in secure containers.

**Section 4.4** CPC is an independent general contractor. CPC has the exclusive authority to sub-contract and to utilize other contractors (including those who are to furnish materials or equipment) ("Subcontractors"), as we deem necessary for completion of the Work. Owner hereby acknowledges and agrees that CPC may sub-contract and use Subcontractors as CPC deems necessary in its sole discretion for completion of the Work. CPC shall have no liability for the gross negligence e or willful misconduct of the Subcontractors.

**Section 4.5** CPC shall provide to Owner certificate(s) of insurance upon request.

**Section 4.6** Any federal, state or local permits or consents required for the performance of the Work shall be purchased by CPC and costs of such shall be billed to the Owner.

**Section 4.7** Disposal of any Hazardous Materials or any other materials that contain Hazardous Materials shall be disposed of in the name of Owner and reference any applicable generator number or other identification required by law. CPC shall not be held liable for the cost of the remediation of any Hazardous Materials required to perform the Work described by the Contract Documents, Owner shall indemnify CPC for all cost, expense damage, penalties, disposal charges, etc., thereby incurred to remediate or otherwise remove Hazardous Materials. Hazardous Materials shall include but is not limited to any substance which is or contains any "hazardous substance" as now or hereafter defined in §101(14) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980.

## ARTICLE V
## PERFORMANCE OF WORK; WARRANTY; GENERAL RELEASE

**Section 5. I** The Work shall be commenced as soon as reasonably practical given the specifications of the Work following execution of this Contract, and CPC shall use reasonable efforts to substantially or fully complete the Work within a reasonable amount of time after beginning the Work. Should CPC be delayed, hindered, interfered with or impeded by any act or omission of Owner, or by any cause beyond CPC's control, and if a cause of the delay, hindrance, interference or impediment is not due to any act or omission of CPC, then CPC shall

be entitled to a reasonable extension of time for completion of the Work. Delays due to slow approval by insurance companies shall not be the responsibility of CPC.

The Work shall be deemed to be "Substantially Complete" on the date that all Work (other than any details of construction, mechanical adjustment or any other similar matter, the noncompletion of which does not materially interfere with Owner's use or occupancy of the Property) has been performed. When CPC considers that the Work is Substantially Complete, CPC shall prepare and submit to Owner a comprehensive list of items to be completed prior to final payment (the "Punchlist"). Upon Owner's receipt of written notice from CPC that the Work is ready for final inspection and acceptance, Owner and CPC will promptly make such inspection and, when Owner finds the Work acceptable and this Contract fully performed, CPC will issue a Final Walk Certificate stating that to the Work has been completed in accordance with terms and conditions of the Contract Documents and the entire balance of the Contract Price is due and payable. The making of the final payment shall constitute a waiver of any and all claims arising out of or relating to this Contract by Owner. By taking possession of the Property, Owner agrees and acknowledges that CPC has no further obligation to perform any Work or other construction and the Property is satisfactory in all respects.

Section 5.2 Warranty. TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, AND EXCEPT AS SPECIFICALLY SET FORTH IN THE WARRANTY, CPC HAS NEITHER MADE NOR MAKES ANY REPRESENTATIONS AND/OR WARRANTIES, EXPRESSED OR IMPLIED, TO OWNER, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTIES OF GOOD AND WORKMANLIKE CONSTRUCTION, USAGE, HABITABILITY, FITNESS FOR ANY PARTICULAR PURPOSE OR FITNESS FOR ANY PURPOSE WHATSOEVER OR WARRANTIES OF MERCHANTABILITY. AT CLOSING, OWNER SHALL EXECUTE AND DELIVER TO CPC A "STATEMENT OF WORK COMPLETE" WHICH CONFIRMS (a) CPC HAS COMPLETED THE WORK TO OWNER'S SATISFACTION, AND (b) THE RELEASE OF ALL WARRANTIES, EXPRESS OR IMPLIED.

Section 5.3 RELEASE. OWNER HEREBY RELEASES AND AGREES TO HOLD HARMLESS CPC, ITS PARENT, AFFILIATE AND SUBSIDIARY COMPANIES, AND THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES, SHAREHOLDERS, PARTNERS, MEMBERS, MANAGERS, AND AGENTS FROM AND AGAINST ANY AND ALL CLAIMS, DEMANDS, LOSSES, DAMAGES, CAUSES OF ACTION, SUITS, JUDGMENTS, AWARDS, COSTS AND EXPENSES (INCLUDING REASONABLE ATTORNEYS' FEES) AND LIABILITIES OF EVERY KIND OR CHARACTER (COLLECTIVELY REFERRED TO AS "DAMAGES"), IN RESPECT TO PERSONAL OR BODILY INJURY TO, SICKNESS, DISEASE, DEATH OR OTHER DAMAGES SUFFERED OR INCURRED BY OWNER AND/OR OWNER'S INVITEES, EMPLOYEES, OFFICERS, DIRECTORS, SHAREHOLDERS OR AGENTS OR THOSE OF ITS PARENT, AFFILIATE AND SUBSIDIARY COMPANIES RESULTING OR ARISING FROM OR ARISING OUT OF OR IN CONNECTION WITH THE WORK DONE BY CPC. UNLESS THE DAMAGES RESULT FROM THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF CPC. IT IS THE INTENT OF BOTH CPC AND OWNER THAT THE FOREGOING INDEMNITY PROVISIONS WILL OPERATE WITHOUT REGARD TO ANY LEGAL THEORY OF NEGLIGENCE OR FAULT, INCLUDING BUT NOT LIMITED TO JOINT AND/OR CONCURRENT NEGLIGENCE OF THE INDEMNITEE.

Section 5.4 No Consequential Damages. Owner agrees that under no circumstance shall CPC be liable to Owner for incidental, consequential or special damages including but not limited to lost revenue, lost profits, lost business, business interruptions, lost business opportunities or any other special, punitive, exemplary or consequential damages.

## ARTICLE VI
## TERMINATION

Section 6.1 <u>Termination.</u> CPC has the right to terminate this Contract at any time. Owner shall be obligated to pay CPC for the Work performed prior to the date of such termination. If CPC terminates this Contract by reason of: (I) Owner's failure to make a payment within the time stated above; (2) Owner's persistently failure to fulfill Owner's obligations under this Contract with respect to matters important to the progress of the Work; or (3) repeated suspensions, delays or interruptions of the Work by Owner, then, CPC may also recover from Owner payment for loss with respect to materials, equipment, tools, and construction equipment and machinery, including reasonable overhead, profit and damages in connection with this Contact.

## ARTICLE VII
## MISCELLANEOUS

Section 7.1 <u>Attorneys' Fees and Costs</u>. If any legal action or other legal proceeding relating to the enforcement of any provision of this Contract is brought against either party, the prevailing party shall be entitled to recover reasonable attorneys' fees, costs and disbursements (in addition to any other relief to which the prevailing party may be entitled).

Section 7.2 <u>Rights and Remedies.</u> CPC's rights and remedies available under this Contract shall be in addition to and not a limitation of the rights and remedies otherwise available by law or equity.

Section 7.3 <u>Entire Agreement; Waiver.</u> This Contract contains the entire agreement between the parties and cannot be changed, modified or amended unless such change, modification or amendment is in writing and executed by the party against which the enforcement of the change, modification or amendment is sought. No action or failure to act by CPC shall constitute a waiver of a right or duty afforded them under this Contract, nor shall such action or failure to act constitute approval of or acquiescence in a breach thereunder, except as may be specifically agreed in writing.

Section 7.4 <u>Counterparts.</u> This Contract may be executed in any number of duplicate counterparts, each of which shall be deemed an original.

## ARTICLE VIII
## GOVERNING LAW; VENUE

Section 8.1 <u>Jurisdiction.</u> This Contract shall be construed in accordance with the law of the place where the Property is located.

Section 8.2 <u>Venue.</u> In any legal action relating to this Contract, Owner agrees to the exercise of jurisdiction over it by a state or federal court in Harris County, Texas.

Executed by the parties below to be effective as of the Effective Date.

Claremont Property Company Representative       OWNER:

By:_____                              By: *Jessica Svenson on behalf of the Board*
Printed Name _____                   Printed Name Jessica Svenson
Date: _____                              Date: 11/20/2020